## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PROGEAR HOLDINGS INC. | ) | CHAPTER 7 |
|     EIN: 76-0538705, | ) | CASE NO. 10-39213 SBB |
| | ) | |
|     *Debtor*. | ) | |
| | ) | |

**TRUSTEE'S COMBINED MOTION FOR:**
**(1) AUTHORITY TO SELL PERSONAL PROPERTY OF THE ESTATE AT AUCTION FREE AND CLEAR OF LIENS;**
**(2) EMPLOY HERITAGE GLOBAL PARTNERS, AUCTIONEER;**
**(3) REIMBURSE AUCTIONEER FOR EXPENSES UP TO $20,000 AND APPROVE COMPENSATION FOR AUCTIONEER;**
**(4) APPROVE AUCTION PROCEDURES;**
**(5) AUTHORITY TO PAY CERTAIN PROCEEDS TO HOLDER OF SECURED CLAIM; AND**
**(6) SUSPEND 14 DAY STAY UNDER FED.R.BANKR.P. 6004(h)**

David E. Lewis, the Chapter 7 trustee herein ("*Trustee*"), by and through his attorneys, Connolly, Rosania & Lofstedt, P.C., seeks an order (1) authorizing the sale of certain personal property of the estate by public auction free and clear of liens pursuant to Bankruptcy Code § 363(b) and (f) and Fed.R.Bankr.P. 6004; (2) authorizing Trustee to employ Heritage Global Partners, a California corporation ("*HGP*") pursuant to Bankruptcy Code § 327(a) and Fed.R.Bankr.P. 2014 as its auctioneer to sell such property; (3) authorizing Trustee to reimburse HGP for expenses up to $20,000 and authorizing compensation for the auctioneer; (4) approving auction procedures; (5) authorizing payment of certain proceeds to the holder of a claim secured by the property to be sold; and (6) suspending fourteen (14) day stay under Fed.R.Bankr.P. 6004(h) (collectively the "*Sale Motion*").  In support hereof, Trustee states as follows:

### BACKGROUND

1.      Progear Holdings Inc. ("*Debtor*") filed a voluntary Chapter 7 bankruptcy petition on November 18, 2010 (the "*Petition Date*").  Trustee is the duly appointed and acting Chapter 7 trustee of the bankruptcy estate.

2.      Prior to the Petition Date, the Debtor owned certain patents, trademarks and other intellectual property related to the manufacture and distribution of golf putters and other golf products marketed under the Yes! Golf brand name.  All of Debtor's assets became property of the Chapter 7 bankruptcy estate on the Petition Date.

3.      Pursuant to Bankruptcy Code § 704, Trustee must collect and reduce all non-exempt property of the estate to money.  Therefore, Trustee seeks to sell substantially all of the assets of the bankruptcy estate at public auction sale outside the ordinary course of business.

4.    Trustee proposes to sell at auction all of the right, title and interest in and to all assets and property of the bankruptcy estate, wherever located, whether or not identified or disclosed on Debtor's books, records and/or Bankruptcy Schedules, including without limitation, the following, but expressly excluding from such property the Excluded Assets (defined below) (collectively the "*Assets*"):

(a)    **Tangible Personal Property.**  All right, title and interest in all tangible personal property owned by the bankruptcy estate including the personal property listed on Schedule B to Debtor's bankruptcy schedules, a copy of which is attached hereto as **Exhibit A**, unless such asset is an Excluded Asset.

(b)    **Intangible Property.**  All right, title and interest in all intangible personal property owned by the bankruptcy estate, together with all books, records and like items pertaining to the business, including, without limitation, the business, trademarks, trade names, service marks, all plans and specifications for improvements or to the products and services of the Debtor's business, all appraisals, engineering and other reports relating to the products and services of the bankruptcy estate, customers lists, catalogues, and other data bases, correspondence with present or prospective customers and suppliers, advertising materials, and telephone exchange numbers identified with the Debtor (collectively, the "*Intangible Property*").  Intangible Property includes the estate's right title and interest in a patent filed with the United States Patent and trademark Office, as Patent No. 5,637,044 dated June 10, 1997 relating to concentric engraving on the putter heads, and any interest the bankruptcy estate has in registered trademarks, trade name, phone numbers and website.  As used in this Agreement, Intangible Property shall in all events exclude: (a) any materials containing privileged communications or information about employees, disclosure of which would violate an employee's reasonable expectation of privacy and any other materials which are subject to attorney-client or any other privilege, and (b) any software or other item of intangible property held by bankruptcy estate pursuant to a license or other rejected contract.

(c)    **Denver Inventory.**  All right, title and interest in putters, putter heads, accessories, apparel, training aids, components and shafts located at the 7700 Cherry Creek South Drive, Denver, Colorado office space (the "*Denver Inventory*").

(d)    **China Inventory.**  The Debtor has traditionally obtained inventory from one to three manufacturers located in China.  As of the bankruptcy petition date, the Debtor estimates that Deson Golf Sport Co., Ltd. and Acme Club Company, Ltd., two of these manufacturers, had completed manufacture of approximately twenty thousand putters at invoice costs as shown on the Debtor's Bankruptcy Schedules.  The invoices for this product have not been paid.  The Buyer may purchase Debtor's rights in this inventory

2

which will remain subject to paying the invoice cost for actual product delivered directly by the manufacturer.  Trustee makes no representations or warranties of any kind that any or all of the manufactured inventory can be delivered, or as to the condition of the manufactured inventory.

(e) **Accounts Receivable**.  All right, title and interest in instruments, receivables, accounts receivable and unbilled costs and fees, and all causes of action relating or pertaining thereto owned by the bankruptcy estate (collectively, the "*Receivables*"). The Receivables may be bad debt or subject to setoff.

5. **Excluded Assets.**  Only the following items are excluded from the Assets to be sold (collectively, the "**Excluded Assets**"):

(a) **Cash and Deposit Accounts.**  Cash and all cash equivalents and bank accounts;

(b) **Lease Deposits.**  All lease deposits.

(c) **Vehicle.**  The 2004 Chevrolet Tahoe 4WD 4 Door.

(d) **Leasehold Improvements.**  All leasehold improvements unless otherwise assigned with the lease of the office space.

(e) **Tax Refunds**.  Any refunds from tax authorities with regards to tax periods prior to the Closing Date;

(f) **Insurance Proceeds.**  All insurance proceeds, unearned premiums, claims and causes of action with respect to or arising in connection with **(i)** any rejected contract which is not assigned to Buyer at the Closing, or **(ii)** any item of tangible or intangible property not acquired by a buyer at closing;

(g) **Preference and Other Avoidance Claims**.  All preference and other avoidance claims and actions of Trustee, including, without limitation, any such claims and actions arising under §§ 544, 547, 548, 549, and 550 of the Bankruptcy Code.

(h) **Corporate Documents**.  All of Debtor's organizational documents and corporate books and records including, without limitation, Debtor's minute books and stock ledger.

(i) **Final Draw on Credit Facility with Sino Sporting Company, Ltd.**  All interests in the final draw amount on the credit facility with Sino Sporting Company, Ltd.  Debtor asserts that the bankruptcy estate's interest in the final draw is subject to liens in favor of Charlene Ricci, Iona Resources Holdings, Ltd. and Joseph Z. Ornelas.

3

6.      The Assets shall be sold "AS IS WHERE IS AND WITH ALL FAULTS WITH NO REPRESENTATIONS MADE BY TRUSTEE."

7.      Trustee may revise the list of Assets to be sold and the Excluded Assets by filing a revised Asset and Excluded Asset list with the Bankruptcy Court one business day prior to the deadline to object to this Sale Motion.

8.      The buyer of the Assets at auction shall take title the Assets at closing and the risk of loss shall shift to the buyer.  Buyer shall be responsible for removing the Assets from their current location.  Neither Trustee nor the bankruptcy estate shall be responsible for any loss, damage or destruction associate with removing the Assets from their current location.

### MOTION FOR AUTHORITY TO SELL FREE AND CLEAR OF LIENS

9.      This Sale Motion seeks authority to sell all of the Assets (except for the Excluded Assets) at public auction pursuant to Bankruptcy Code § 363(b).  Trustee anticipates entering into an agreement with a potential bidder that will be the initial bid at the auction (the "*Stalking Horse Bid*").  Upon entering into an agreement for a Stalking Horse Bid, Trustee will supplement this Sale Motion seeking approval from the Bankruptcy Court of the terms of the Stalking Horse Bid.  Upon approval by the Bankruptcy Court, all competing bids at the auction will be subject to the terms of the Stalking Horse Bid.  In the event that Trustee is unable to enter into a Stalking Horse Bid, Trustee will proceed with an open auction.  Using his best business judgment, Trustee has set a reserve price (minimum bid) of $675,000.  In the event that the reserve price is not met, Trustee reserves the right to refrain from accepting a lower bid and to refrain from closing on the sale of the Assets for such lower bid.

10.     Trustee believes that the Assets are subject to a blanket lien in favor Colorado State Bank and Trust, N.A. (the "*Bank*").  In the Sale Motion, Trustee is seeking authority to sell the Assets free and clear of the Bank's liens and any other liens, claims or encumbrances pursuant to Bankruptcy Code § 363(f).  Trustee and the Bank have entered into a Stipulation regarding the sale of the Assets free and clear of the Bank's lien (the "*Bank Stipulation*").  The Bank Stipulation is being filed simultaneously with this Sale Motion.  The Bank Stipulation provides that the Bank will receive the first $548,000 in proceeds, the estate will receive the next $52,000 in proceeds and the parties will split all proceeds over $600,000 with 60% going to the estate and 40% going to the Bank.  Upon approval of the terms of the Bank Stipulation, Trustee believes that the Bank will consent to the sale of the Assets free and clear of its liens.  In this Sale Motion, Trustee is seeking authority to pay the Bank's secured claim at closing in accordance with the terms of the Bank Stipulation.

11.     Trustee is unaware of any other liens against the Assets to be sold at auction.

12.     When determining whether to grant an application to use, sell or lease property of the estate other than in the ordinary course of business pursuant to Bankruptcy Code § 363(b), the Court must expressly find a good business reason to grant such an application.  *In re Lionel Corp.,* 722 F.2d 1063, 1071 (2nd Cir. 1983).  *See also, In re Schipper*, 933 F.2d 515 (7th Cir. 1991).  Pursuant to the Bankruptcy Code, Trustee must proceed to liquidate the assets of the

4

bankruptcy to money for the benefit of creditors.  Therefore, Trustee is filing this Sale Motion to move forward with the liquidation of the Assets.

## MOTION TO EMPLOY HGP, REIMBURSE AUCTION EXPENSES AND AUTHORIZE AUCTIONEER'S COMPENSATION

13.     After ongoing discussions and investigations, Trustee has determined that public auction is the best method for sale of the Assets, in conjunction with a possible Stalking Horse Bid.  Trustee has been in negotiations with HGP and wishes to hire HGP as the auctioneer to conduct the auction.  Trustee believes that HGP will timely and effectively inventory, market and conduct an auction of the Assets.

14.     Trustee has entered into an Exclusive Auction Agreement, a copy of which is attached hereto as **Exhibit B** (the "*Listing Agreement*").  The Listing Agreement is subject to Bankruptcy Court approval.  Pursuant to the Listing Agreement, HGP will sell the Assets at public auction at 7700 Cherry Creek South Drive, Denver, Colorado office space or such other place as to be determined by the parties.  The Listing Agreement provides, among other things:

    (a)     HGP will perform the following services for Trustee:

        (1)     inventory the Assets;
        (2)     work with Trustee in preparing the Assets for sale;
        (3)     assist Trustee in gathering information related to the Assets and distributing such information to potential bidders;
        (4)     advertise the Assets for sale and advertise the date, time and place of the auction;
        (5)     conduct the auction;
        (6)     collect and pay all proceeds of sale to Trustee;
        (7)     collect and an pay all applicable sales taxes due as a result of such sale to Trustee to remit to the appropriate taxing authorities;
        (8)     collect and pay to Trustee the Buyer's Premium (as defined below);
        (9)     prepare a report after sale showing the name of the purchaser and the sales price of the property;
        (10)     locate and reserve a room for the auction if not held at the Leased Premises;
        (11)     provide general auctioneer services to the estate.

    (b)     HGP shall receive no commission from the bankruptcy on the sale of the Assets.

    (c)     If there is a Stalking Horse Bid, HGP shall charge a buyer's premium ("Buyer's Premium") on any qualified competing bid over the Stalking Horse Bid equal to 10% of the competing bid or if no Stalking Horse Bid, HGP will charge a Buyer's Premium on any qualified competing bid above the $675,000 reserve price equal to 10% of the competing bid amount.

(d)     HGP will incur substantial expenses in the inventorying the assets to be sold, preparing the assets for sale and advertising the sale.  Trustee agrees to reimburse HGP for all such necessary costs and expenses, including advertising, incurred relating to the auction out of the sales proceeds up to a maximum of $20,000.  For the auction to be successful it is essential that substantial work be done to prepare for and advertise the auction.  Consequently, the proposed expenditure of up to $20,000 for the auction is reasonable and it is customary and appropriate to reimburse these expenses to the auctioneer at the time of sale out of the sales proceeds.  The payment up to $20,000 shall be made from the estate's share of the proceeds and shall not affect the percentage calculation in the Bank Stipulation.

15.     Various interested parties have expressed desire to close on the sale by mid-January so that the purchaser can participate in the PGA tradeshow scheduled for January 27-29, 2011 in Orlando, Florida.  Trustee believes that if the estate is unable to close prior to the PGA tradeshow, certain bidders will not participate in the auction and the value of the Assets may be compromised. Therefore, Trustee and HGP wish to schedule the auction for no later than January 18, 2011.

16.     Pursuant to the Listing Agreement, the gross sales proceeds, any applicable sales taxes and the Buyer's Premium shall be collected by HGP and wired to Trustee prior to closing. The Buyer's Premium shall be paid to HGP at the closing.

17.     HGP will comply with the requirements of the Bankruptcy Code, Federal Rules of Bankruptcy Procedures and the Office of the United States Trustee in conducting the auction.

## HGP QUALIFICATIONS AND DISINTERESTEDNESS

18.     To the best of Trustee's knowledge, HGP is a disinterested person and does not hold or represent an interest adverse to Trustee or the bankruptcy estate in matters upon which HGP is to be engaged.  HGP does not have any connection with the Debtor, its creditors, or any other party in interest or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee other than HGP may have performed asset valuations or auctions for Debtor's creditors on unrelated matters.

19.     Attached hereto as **Exhibit C** is the Affidavit of Ross Dove, which states that HGP is a disinterested person under 11 U.S.C. §§ 101 and 327.  The Affidavit also states that HGP is not a creditor, equity security holder or insider of the Debtor and does not have an interest materially adverse to the interest of their respective estates or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtor or for any other reason other than HGP may have performed asset valuations or auctions for Debtor's creditors on matters unrelated to HGP's engagement.  The Affidavit further states that HGP does not hold or represent an interest adverse to the Debtor or the bankruptcy estate in matters upon which HGP is to be engaged.

20.     HGP is in compliance with all applicable licensing requirements in the State of Colorado for conducting the auction and the bonding requirements of the United States Trustee.

HGP maintains general liability insurance and statutory workers' compensation insurance. See **Exhibit C** attached hereto.

## MOTION TO APPROVE AUCTION PROCEDURES

21. Trustee proposes the following auction procedures:

    (a)    **Sale Date and Closing Date**. Trustee shall schedule an auction for the Assets to occur no later than January 18, 2011, and at the earliest date before then if possible. The closing date shall be within 48 hours from conclusion of the auction.

    (b)    **Stalking Horse Bid.** Trustee is in negotiations for a Stalking Horse Bid. If Trustee is able to reach an agreement on a Stalking Horse Bid, Trustee will supplement this Sale Motion with the terms and conditions of such Stalking Horse Bid. The Stalking Horse Bid may provide for a break-up fee. The terms and conditions of the Stalking Horse Bid are subject to approval by the Bankruptcy Court. Upon approval the Stalking Horse Bid will be the initial bid at the auction and all competing bids will be subject to the terms of the Stalking Horse Bid.

    (c)    **Confidentiality Agreement.** Each potential bidder wishing to receive information regarding the Assets must enter into a confidentiality agreement prior to receiving information.

    (d)    **Qualified Bids**. Each party wishing to bid at the auction will need to provide proof of financial ability to close. Such information shall be kept confidential and the financial information shall be provided to HGP no later than 24 hours prior to the auction date. In addition, each qualified bidder must sign a bid form prior to the auction pursuant to which the bidder acknowledges that the bidder has read the Order approving the sale, and agrees: (i) to be bound by the terms and conditions set forth in the Order; (ii) that, if the bidder's bid is accepted, bidder is obligated to close the purchase transaction with Trustee by the closing date; and (iii) that, if bidder fails to timely close the purchase transaction by the closing date, the bidder will be in default, bidder's earnest money will be forfeited and Trustee will be free to sell the Assets to the next highest bidder then willing and able to close.

    (e)    **Earnest Money.** Each party wishing to bid at the auction must make an earnest money deposit in the amount of $25,000 in the form of a cashier's check or other certified funds made payable to Trustee. Deposits will be nonrefundable if the bidder is determined to be the Successful Bidder (as defined below) and such bidder fails to close on the sale. If the Successful Bidder closes on the sale, the earnest money deposit will be applied towards the Purchase Price. The earnest money deposit will be refundable if the bidder is not the Successful Bidder.

(f) **Opening Bid.** The opening bid shall be the amount of the Stalking Horse Bid or if no Stalking Horse Bid, HGP will start with an open auction. In the event that the reserve price is not met, Trustee reserves the right to refrain from accepting a lower bid at the auction and to refrain from closing on the sale of the Assets for such lower bid.

(g) **Competing Bids.** Each competing bid must include a cash bid that is at least $10,000 higher than the last bid if the last bid was not made by the Stalking Horse Bidder. If the last bid was made by the Stalking Horse Bidder, the competing bid must be at least $10,000 plus the amount of the approved break-up fee to be the higher and better bid.

(h) **Conclusion of Auction**. Bidding shall continue until determined by HGP. Provided the reserve price is met, in the event one or more overbids are made at the auction, the bidder making the last, highest and best overbid, as determined by Trustee and HGP, will be announced as the buyer of the Assets (the "*Successful Bidder*").

## MOTION TO LIFT THE STAY PURSUANT TO FED.R.BANKR.P. 6004(h)

22. Trustee requests that the Court suspend the operation of Fed.R.Bankr.P. 6004(h). Various interested parties have expressed their concern to close on the sale by mid-January so that they can participate in the PGA tradeshow scheduled for January 27-29, 2011 in Orlando, Florida. Trustee believes that if the estate is unable to close prior to the PGA tradeshow, certain bidders will not participate in the auction and the value of the Assets may be compromised.

**WHEREFORE**, Trustee respectfully requests that the Court enter an order:

(a) authorizing Trustee to sell the Assets at auction sale pursuant to 11 U.S.C. § 363(f);

(b) ordering that the Successful Bidder at the auction sale shall take title to the items purchased and paid for free and clear of liens as described in this Sale Motion;

(c) approving the Bank Stipulation and authorizing Trustee to pay the Bank's secured claim at closing pursuant to the terms of the Bank Stipulation;

(c) approving the Listing Agreement with HGP and authorizing Trustee to employ HGP to act as auctioneer for the estate to sell the Assets at public auction, other than in the ordinary course of business and authorizing HGP to conduct a public auction of the Assets in the manner described above;

(d) authorizing Trustee to collect the sales proceeds from the Buyer, collect any applicable sales tax, remit any applicable sales tax to the appropriate taxing authorities on behalf of the bankruptcy estate, reimburse HGP up to $20,000 for auction related costs and expenses incurred by ;

(e)     authorizing HGP to collect the Buyer's Premium and upon closing of the sale, retain the Buyer's Premium as its compensation for its services related to the auction;

(f)     approving the proposed auction procedures set forth above;

(g)     suspending the fourteen-day (14) stay provided in Fed.R.Bankr.P. 6004(h) and the three-day "order delay" prescribed by Local Bankruptcy Rule 9013-1(c); and

(h)     granting such other and further relief as the Court deems just and proper.

Date:  December 23, 2010         Respectfully submitted,

CONNOLLY, ROSANIA & LOFSTEDT, P.C.


By:     */s/ Joli A. Lofstedt, Esq.*
        Joli Lofstedt (#21946)
        Ellen Cadette (#25980)
        950 Spruce St., Ste. 1C
        Louisville, CO 80027
        (303) 661-9292
        (303) 661-9555 fax
        joli@crlpc.com
        ellen@crlpc.com

*Counsel to David E. Lewis, Chapter 7 trustee.*

B6B (Official Form 6B) (12/07)

IN RE **Progear Holdings Inc.**                                          Case No. **10-39213**
_____
                    Debtor(s)                                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY                    Exhibit "A"

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **balance in Colorado State Bank & Trust account 000407959** **balance in Colorado State Bank & Trust account 8090960564** | | **2,244.57** **786.76** |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | | **lease deposits** | | **10,320.00** |
| 4.  Household goods and furnishings, include audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **prepaid automobile insurance.  Farmers Insurance Policy No. 185878827. Prepaid through 4/21/2011.  Amount of unearned premium which is refundable unknown.** | | **1.00** |
| 10.  Annuities. Itemize and name each issue. | X | | | |
| 11.  Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13.  Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14.  Interests in partnerships or joint ventures. Itemize. | X | | | |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

IN RE **Progear Holdings Inc.**                                                                    Case No. **10-39213**

<u>Debtor(s)</u>                                                                                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16. Accounts receivable. | | Customer Receivables see exhibit | | 196,263.37 |
| | | Francis M. Ricci reimbursement | | 132.00 |
| 17. Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | Loan Receivable --- Wayne Farrell | | 40,870.81 |
| 19. Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | Breach of contract claim against Korean distributor Pro Gear Holdings Co., Ltd. | | 2,000,000.00 |
| | | Leasehold Improvements at net book value | | 333.50 |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | | brand assets, including value of patent rights, registered trademarks, and business goodwill | | 1,500,000.00 |
| | | Patent And Trademarks at net book value | | 77,791.00 |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 2004 Chevrolet Tahoe 4wd 4 DR, VIN # 1GNEK13Z84J238217. Registered owner on title Charlene K. Ricci. Named insured on Farmers property and casualty insurance policy Francis M. Ricci. | | 8,000.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | | Office and Camera Equipment at net book value | | 32,283.00 |
| | | Office Furniture and Fixtures at net book value | | 64,609.00 |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | Equipment and Molds. cost at net book value, less Chevrolet Tahoe listed elsewhere. | | 44,452.00 |

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

IN RE **Progear Holdings Inc.**                                                    Case No. **10-39213**
_____                                    _____
Debtor(s)                                                                        (If known)

# SCHEDULE B - PERSONAL PROPERTY
## (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 30.  Inventory. | | **Inventory of putters, putter heads, accessories, apparel, training aids, components, shafts.** | | **1,150,536.00** |
| | | **Inventory of putters, putter heads, components and shafts, subject to setoff, located in China** | | **1,235,965.11** |
| 31.  Animals. | X | | | |
| 32.  Crops - growing or harvested. Give particulars. | X | | | |
| 33.  Farming equipment and implements. | X | | | |
| 34.  Farm supplies, chemicals, and feed. | X | | | |
| 35.  Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | TOTAL | 6,364,588.12 |

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

_____ **0** continuation sheets attached

© 1993-2010 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Exhibit "B"

 **Heritage Global Partners**

Asset Advisory and Auction Services

*A Legacy since 1937*

## EXCLUSIVE AUCTION AGREEMENT

This Exclusive Auction Agreement ("Agreement") is made as of December 22, 2010 ("Effective Date")

BETWEEN:

> David Lewis, Chapter 7 Trustee of
> the bankruptcy estate of ProGear Holdings, Inc.
> 1314 Main Street #102
> Louisville, CO  80027
> Attention:        David Lewis
> Telephone:      (303) 666-1217
> Fax:                (303) 665-4400
>
> ("Seller"),

AND

> Heritage Global Partners, a California corporation
> Hacienda Del Mar
> 12625 High Bluff Drive Suite 211
> San Diego, CA  92130
> Attention:        Kirk Dove
> Telephone:      (858) 847-0650
> Fax:                (858) 847-0660
>
> ("Auctioneer")

WHEREAS, Seller wishes to sell certain assets of the bankruptcy estate by public auction, and Auctioneer has agreed to conduct a public auction on the terms and conditions set forth below;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are mutually acknowledged, Auctioneer and Seller agree as follows:

1. **BANKRUPTCY COURT APPROVAL**. This Agreement is subject to, and shall not become effective, until it is approved by written order of the United States Bankruptcy Court in the above-mentioned proceeding upon such notice as may be required.  Trustee will promptly make application for approval of this Agreement in connection with the motion to approve the sale of the assets by public auction free and clear of liens.

2. **AUCTION**:  Seller wishes to retain Auctioneer on an exclusive basis to market and conduct an auction (the "Auction") of the assets set forth on Exhibit A attached hereto (the "*Assets*").  Auctioneer shall meet all of the conditions required by the Office of the United States Trustee in order to conduct the auction.

Trustee anticipates entering into an agreement with a potential bidder that will be the initial bid at the auction (the "*Stalking Horse Bid*"). Upon entering into an agreement for a Stalking Horse Bid, Trustee will supplement this Sale Motion seeking approval from the Bankruptcy Court of the terms of the Stalking Horse Bid. Upon approval by the Bankruptcy Court, all competing bids at the auction will be subject to the terms of the Stalking Horse Bid. In the event that Trustee is unable to enter into a Stalking Horse Bid, Trustee, will proceed with an open auction. Using his best business judgment, Trustee has set a reserve price (minimum bid) of $675,000. In the event that the reserve price is not met, Trustee reserves the right to refrain from accepting a lower bid at the auction and to refrain from closing on the sale of the Assets for such lower bid.

Trustee believes that the Assets are subject to a blanket lien in favor Colorado State Bank and Trust, N.A. (the "*Bank*"). In the Sale Motion, Trustee is seeking authority to sell the Assets free and clear of the Bank's liens and any other claims or encumbrances pursuant to Bankruptcy Code § 363(f). Trustee and the Bank have entered into a Stipulation regarding the sale of the Assets free and clear of the Bank's lien. The Stipulation is being filed simultaneously with this Motion. This Agreement is contingent on approval of selling the Assets free and clear of liens.

**3. CONDUCT OF THE AUCTION:** The Auction will be conducted no later than January 18, 2011 in Denver, Colorado or on such date or such place as Seller and Auctioneer mutually agree. At all times the Auction will be conducted at the agreed upon site and over the Internet using webcast technology. Seller agrees that Auctioneer *may* use the Progear Holdings, Inc. name, street address and logo in its advertising in accordance with Auctioneer's customary practice, including on its Website as well as in any press release, solely to perform services under this Agreement. Any property of the bankruptcy estate that is not being sold is listed on Exhibit A as the Excluded Assets shall remain property of the bankruptcy estate and shall not be auctioned. Auctioneer shall not be responsible for the removal of the Excluded Assets.

**4. DISCLAIMERS OF WARRANTIES**: Auctioneer shall state both in its advertising for the Auction and at the Auction that all Assets are being sold "AS IS WHERE IS, AND WITH ALL FAULTS WITH NO REPRESENTATIONS MADE BY SELLER and with any additional disclaimers of warranty, including disclaimers of the warranties of merchantability and fitness for a particular purpose. Seller acknowledges and agrees that Auctioneer has no knowledge with respect to, and has no obligation to investigate, the merchantability or fitness for any particular use of any Asset.

**5. COMPENSATION:** If there is a Stalking Horse Bid, Auctioneer shall charge a buyer's premium ("Buyer's Premium") on any qualified competing bid over the Stalking Horse Bid equal to 10% of the competing bid or if no Stalking Horse Bid, HGP will charge a Buyer's Premium on any qualified competing bid above the $675,000 reserve price equal to 10% of the competing bid amount. The Buyer's Premium shall be paid directly to Trustee in addition to the purchase price and paid to Auctioneer by the Trustee per Section 8. Payment to the Auctioneer of such Buyer's Premium by the successful bidder is not dependent on any other service provided by the Auctioneer in connection with the Auction subsequent to the closing of the sale of the Assets. Seller shall not be liable to Auctioneer for Buyer's Premium in the event that any overbidder fails to live up to or perform under its overbid and complete a purchase.

**6. DUE DILIGENCE.** In connection with the sale, Seller intends to assemble due diligence information related to the Assets (the "Due Diligence Information") and deliver such Due Diligence Information to prospective bidders. Auctioneer shall assist Seller in gathering and compiling Due Diligence Information for prospective bidders.

**7. AUCTION EXPENSES:** After the closing from the proceeds of sale, Seller shall reimburse Auctioneer for its actual out-of-pocket expenses related to conducting the auction, which expenses shall not exceed $20,000. In the event that Seller is unable to close on a the sale, Auctioneer shall be entitled to assert an administrative claim against the bankruptcy estate for its out-of-pocket expenses related to the auction, which expenses shall not exceed $20,000.

Out-of-pocket expenses may include the following:

(a) Advertising and Direct Marketing: including digital photography of the Assets, print and electronic media production, creative services, ad placement lees, brochure and catalog production, telemarketing, data list purchases, fax and email advertising and postage incurred in connection with the Auction.

(b) Travel and Lodging: Auctioneer's actual travel and lodging expenses directly related to the Auction.

(c) Miscellaneous Expenses related to Auction: including organization and inventorying the Assets, equipment rental, permits, UCC searches/lien releases.

### 8. COLLECTION AND DISBURSEMENT OF AUCTION PROCEEDS:

(a) Prior to the closing, Auctioneer shall collect from the successful purchaser of the Assets, by wire transfer or in good funds, the gross proceeds, any applicable sales taxes and amounts due as the Buyer's Premium. Such amounts shall be wired directly to Seller to be deposited into a segregated bankruptcy estate account for the closing. Subject to Court approval, at the Closing, Seller shall use funds in the segregated account to remit all applicable sales taxes collected to the appropriate taxing authorities, discharge any liens on the Assets (the "Liens") and pay the Buyer's Premium to Auctioneer.

(b) No later than 30 calendar days after the Auction, Auctioneer shall also issue to Seller a Report of Sale showing, generally, a description of the marketing efforts performed by Auctioneer, list of all bidders and the actual bids at the auction and report on the accepted bid and closing of the sale. Seller shall file the Report of Sale with the Bankruptcy Court.

### 9. ASSET TRANSPORTATION, SUBSEQUENT AUCTIONS AND RIGHT OF SURRENDER:
Auctioneer shall not be responsible for transporting the Assets transportation to the auction site or Leased Premises prior to the Auction. The successful purchaser shall be responsible for removing the Assets from the Leased Premises. In the event that walls or other structures must be removed or modified to remove the Assets sold at the Auction, Auctioneer shall not be required to supervise or incur additional cost or expense to remove such Assets.

**10 ASSET REMOVAL**: Auctioneer shall not be responsible for rigging and shipping the Assets sold. Under no circumstances shall Auctioneer be responsible for any loss, damage or destruction associated with asset removal or disconnection, except to the extent that such loss damage or destruction results from the negligence of Auctioneer.

**11. INSURANCE**: Seller shall be solely responsible for maintaining adequate insurance coverage pertaining to the Assets and storage at the Leased Premises. If the Auction is to occur at the Leased Premises, Seller also shall maintain adequate liability insurance for the duration of the Auction and related activities. Auctioneer shall carry all workers' compensation insurance for Auctioneer's employees in compliance with all applicable state and local laws. If the Auction site shall not be at the Leased Premises, Auctioneer shall maintain adequate liability insurance for the duration of the Auction and related activities.

**12. DESTRUCTION OF ASSETS**: In the event of any loss, damage or destruction of any Assets prior to the closing, Auctioneer shall be entitled to assert an administrative claim against the bankruptcy estate for its direct expenses related to the auction except to the extent the loss, damage or destruction is the result of Auctioneer's negligence. The risk of loss shall transfer to the successful purchaser at the closing.

**13. USE OF PREMISES**:

(a) For the purposes of this Agreement, the "Leased Premises" shall mean 7700 Cherry Creek South Drive, Suite 100 Denver, CO 80231.   Seller authorizes Auctioneer and its representatives to enter upon and use the Leased Premises and will use his best efforts to provide access for Auctioneer to enter the Leased Premises for the purposes of (i) storing the Assets thereupon, (ii) preparing the Assets for sale, (iii) otherwise exhibiting the Assets to prospective purchasers, and (iv) for such other purposes as are reasonable and necessary to conduct the Auction.  Seller agrees that Auctioneer shall not be charged a fee for the use of the Premises. Seller will use his best efforts to furnish utilities to the Leased Premises.

(b) Seller acknowledges and agrees that Auctioneer has no interest of any kind or nature in the Leased Premises, and that Auctioneer has no knowledge as to any previous use or occupancy of the Leased Premises.  Seller acknowledges and agrees that Auctioneer shall not be responsible for damage or injury to the Leased Premises resulting from or arising in connection with the sale or removal of the Assets, except to the extent that such damage or injury is caused by Auctioneer's negligence.

**14. REPRESENTATIONS AND WARRANTIES:**  Seller is the Chapter 7 trustee of the bankruptcy estate of Progear Holdings, Inc.  Seller has not acquired the Assets for purposes of maintaining the same, but rather for the purpose of liquidating the same under the Bankruptcy Code and has hired Auctioneer to assist in the liquidation of the Assets.  Due to the unique nature of the Bankruptcy proceedings, neither Seller nor Auctioneer have personally used the Assets and are unaware of the true condition of the Assets.  Neither Seller not Auctioneer are able to make, shall not be required to make and shall not be deemed to have made, any representation or warranty whatsoever as to the physical condition of the Assets or as to the operative or proposed governmental laws and regulations to which the Assets may be subject.  The purchase of the Assets must be solely on the basis of any purchaser's own review and investigation of the physical condition of the Assets, and the applicability and effect of any laws and regulations to which the Assets may be subject.  Although Seller and Auctioneer may reasonably cooperate with any potential purchaser's inspection of the Assets and review of any documents affecting the Assets, neither Seller nor Auctioneer shall assume the risk that adverse matters may not have been disclosed by any potential purchaser's investigation.  As a standard matter of practice involving properties conveyed from bankruptcy estates through court appointed administrators, Seller's limited knowledge of the Assets as the trustee of a bankruptcy estate does not permit either Seller to sell the Assets other than in its present "AS IS" condition, subject to all faults.  Accordingly, the Assets shall be sold "AS IS WHERE IS, AND WITH ALL FAULTS WITH NO REPRESENTATIONS MADE BY SELLER."  Upon agreement to mutually acceptable terms of sale, Seller shall seek an Order of the Bankruptcy Court by which the Trustee will be empowered to convey the Assets to the purchaser free and clear of all liens and encumbrances.

**15. CONDITIONS TO AGREEMENT**:  This Agreement is subject to the following conditions, and if any of such conditions are not met, this Agreement shall be null and void:

   (a)   Entry of an Order by the Bankruptcy Court authorizing the sale of the Assets free and clear of liens pursuant to Bankruptcy Code § 363(b) and (f);

   (b)   Entering into an agreement with the secured lenders asserting liens on the Assets consenting to the sale of the Assets;

   (c)   Entry of an Order by the Bankruptcy Court approving the auction procedures, including the date, time and place of the auction.

**16. DUTIES OF AUCTIONEER:**  In performing services, Auctioneer will comply with the requirements of the Bankruptcy Code, Federal Rules of Bankruptcy Procedures and the of the United States Trustee.  Auctioneer shall perform the following duties, among others, related to the auction:

   (a)   Auctioneer will perform the following services for Trustee:

(1)     inventory the Assets;

(2)     work with Seller in preparing the Assets for sale;

(3)     Assist Seller in gathering information related to the Assets and distributing such information to potential purchasers;

(4)     advertise the Assets for sale and advertise the date, time and place of the auction;

(5)     conduct the auction;

(6)     collect and pay all proceeds of sale to Trustee;

(7)     collect and pay all applicable sales taxes due as a result of such sale to Trustee to remit to the appropriate taxing authorities;

(8)     collect and pay to Trustee the Buyer's Premium;

(9)     prepare a report after sale showing the name of the purchaser and the sales price of the property;

(10)    locating and reserving a room for the auction if not held at the Leased Premises; and

(11)    provide general auctioneer services to the estate.

**17. LIMITATION OF LIABILITY**: Auctioneer's maximum liability for the breach of any obligation in connection with this Agreement or the Auction, and for any and all damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by Seller or any other person or entity in connection with this Agreement or the Auction, shall be limited to the amounts actually received by Auctioneer as compensation under this Agreement.

**18. TECHNOLOGY DISCLAIMER: AUCTIONEER DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN THE WEBSITE, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH THE WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED OR ERROR-FREE, OR THAT DEFECTS WILL BE CORRECTED.**

**19. INDEPENDENT PARTIES**: This Agreement shall not be construed (i) to create a partnership or joint venture between Seller and Auctioneer, or (ii) to imply that Auctioneer is buying the assets of, or any interest in, Seller.

**20. COUNTERPARTS; FACSIMILE SIGNATURES**: This Agreement may be executed in any number of counterparts, each of which, when executed, will be deemed to be an original and all of which, when taken together, will be deemed to be but one and the same instrument. Delivering Signatures via facsimile shall be an acceptable means of executing] this Agreement, and signatures so delivered shall be fully binding on the signing party.

**21. GOVERNING LAW; JURISDICTION**: This Agreement shall be governed by, and construed and enforced in accordance with, the substantive laws of the State of Colorado as applied to agreements made in Colorado, without regard to choice *at* law principles. Each party consents to jurisdiction and service of process as provided in the Bankruptcy Code for any action or proceeding arising under this

Agreement, and venue in any such action will lie in United States Bankruptcy Court for the District of Colorado.

**22. SEVERABILITY**: The provisions of this Agreement shall be severable. Should any part, term or provision of this Agreement be construed by any court of competent jurisdiction to be illegal, invalid or unenforceable for any reason, the legality, validity and enforceability of the remaining parts, terms and provisions shall not be affected thereby.

**23. COMPLETE AGREEMENT**: This Agreement constitutes the entire understanding between the parties and replaces any and all prior agreements related to the Auction This Agreement may not be modified or amended except in writing signed by both parties.

| *David E Lewis Chpt 7 Trustee* | Heritage Global Partners |
|---|---|
| Seller:   David E. Lewis, Chapter 7 Trustee of the | California Bond Number 6150320 |
| bankruptcy estate of Progear Holdings, Inc. | By: |
| | Name:   STEPHEN GROSS |
| | Title:   CFO |

*x by Joli A. Oefstedt with authority*

# EXHIBIT A
# ASSETS

1.      The assets to be sold at auction shall include all of the right, title and interest in and to all assets and property of the bankruptcy estate, wherever located, whether or not identified or disclosed on Debtor's books, records and/or Bankruptcy Schedules, including without limitation, the following, but expressly excluding from such property the Excluded Assets (defined below) (collectively the "*Assets*"):

(a)      **Tangible Personal Property.**   All right, title and interest in all tangible personal property owned by the bankruptcy estate including the personal property listed on Schedule B to Debtor's bankruptcy schedules, a copy of which is attached hereto as Exhibit A, unless such asset is an Excluded Assets.

(b)      **Intangible Property.**   All right, title and interest in all intangible personal property owned by the bankruptcy estate, together with all books, records and like items pertaining to the business, including, without limitation, the business, trademarks, trade names, service marks, all plans and specifications for improvements or to the products and services of the Debtor's business, all appraisals, engineering and other reports relating to the real property leases or to the products and services of the bankruptcy estate, customers lists, catalogues, and other data bases, correspondence with present or prospective customers and suppliers, advertising materials, and telephone exchange numbers identified with the Debtor (collectively, the "*Intangible Property*").   Intangible Property of the bankruptcy includes the estate's right title and interest in a patent filed with the United States Patent and trademark Office, as Patent No. 5,637,044 dated June 10, 1997 relating to concentric engraving on the putter heads, and any interest the bankruptcy estate has in registered trademarks, trade name, phone numbers and website. As used in this Agreement, Intangible Property shall in all events exclude: (a) any materials containing privileged communications or information about employees, disclosure of which would violate an employee's reasonable expectation of privacy and any other materials which are subject to attorney-client or any other privilege, and (b) any software or other item of intangible property held by bankruptcy estate pursuant to a license or other rejected contract.

(c) **Denver Inventory.** All right, title and interest in putters, putter heads, accessories, apparel, training aids, components and shafts located at the 7700 Cherry Creek South Drive, Denver, Colorado office space (the "*Denver Inventory*").

(d) **China Inventory.** The Debtor has traditionally obtained inventory from one to three manufacturers located in China. As of the bankruptcy petition date, the Debtor estimates that Deson Golf Sport Co., Ltd. and Acme Club Company, Ltd., two of these manufacturers, had completed manufacture of approximately twenty thousand putters at invoice costs as shown on the Debtor's Bankruptcy Schedules. The invoices for this product have not been paid. The Buyer may purchase Debtor's rights in this inventory which will remain subject to paying the invoice cost for actual product delivered directly by the manufacturer. Seller makes no representations or warranties of any kind that any or all of the manufactured inventory can be delivered, or as to the condition of the manufactured inventory. Buyer may choose to exclude this assignment of rights from this Agreement.

(d) **Accounts Receivable.** All right, title and interest in instruments, receivables, accounts receivable and unbilled costs and fees, and all causes of action relating or pertaining thereto owned by the bankruptcy estate (collectively, the "*Receivables*"). The Receivables may be bad debt or subject to setoff.

2. **Excluded Assets.** Only the following items are excluded from the Assets (collectively, the "**Excluded Assets**"):

(a) **Cash and Deposit Accounts.** Cash and all cash equivalents and bank accounts;

(b) **Lease Deposits.** All lease deposits.

(c) **Vehicle.** The 2004 Chevrolet Tahoe 4WD 4 Door.

(d) **Leasehold Improvements.** All leasehold improvements unless otherwise assigned with the lease of the office space.

(e) **Tax Refunds.** Any refunds from tax authorities with regards to tax periods prior to the Closing Date;

(f) **Insurance Proceeds**. All insurance proceeds, claims and causes of action with respect to or arising in connection with **(i)** any Rejected Contract (as defined below) which is not assigned to Buyer at the Closing, or **(ii)** any item of tangible or intangible property not acquired by Buyer at the Closing;

(g) **Preference and Other Avoidance Claims**. All preference and other avoidance claims and actions of Seller, including, without limitation, any such claims and actions arising under §§ 544, 547, 548, 549, and 550 of the Bankruptcy Code.

(h) **Corporate Documents**. All of Debtor's organizational documents and corporate books and records including, without limitation, Debtor's minute books and stock ledger.

Exhibit "C"

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

In re:                                    )
                                          )
PROGEAR HOLDINGS INC.                     )    CHAPTER 7
    EIN: 76-0538705,                     )    CASE NO. 10-39213 SBB
                                          )
    Debtor.                              )
                                          )

---

### AFFIDAVIT OF AUCTIONEER

---

STATE OF CALIFORNIA            )
                               )    ss.
COUNTY OF SAN DIEGO            )

I, Ross Dove, am the Managing Partner of Heritage Global Partners, a California corporation, being first duly sworn, do state and aver as follows:

1.    I am an experienced Auctioneer/Liquidator licensed to provide these services in the State of California and State of Colorado.

2.    I maintain an office at Hacienda Del Mar, 12625 High Bluff Drive, Suite 211, San Diego, CA 92130. My telephone number is (858) 847-0650.

3.    To the best of my knowledge, neither I, nor any employees, officers or directors of Heritage Global Partners have any connection with Trustee, Debtor, Debtor's creditors, any other party in interest or their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee, other than Heritage Global Partners may have performed asset valuations or auctions for Trustee, Trustee's counsel and Debtor's creditors on unrelated matters.

4.    To the best of my knowledge, neither I, nor any employees, officers or directors of Heritage Global Partners is a creditor, equity security holder or insider of Debtor.

5.    To the best of my knowledge, neither I, nor any employees, officers or directors of Heritage Global Partners is or was, within two years before the filing of the petition, a director, officer, or employee of the Debtor.

6.    To the best of my knowledge, neither I, nor any employees, officers or directors of Heritage Global Partners, holds or represents an interest adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

7.      I believe that Heritage Global Partners is a disinterested person with the meaning of 11 U.S.C. § 101(14).

8.      Heritage Global Partners has a blanket bond in the amount of Fifty Thousand Dollars ($50,000.00).  Bond No. 0531427 is a bond issued in the favor of the U.S. Government. This Bond has been in force since October 26, 2010 and is paid up until cancelled.

10.     Heritage Global Partners has liability insurance in the amount of $2,000,000; it also has theft, fire and casualty insurance of $1,000,000.  These policies are issued by Federal Insurance Company, policy number 35920596.  The insurance is in effect and is paid quarterly through the next renewal date of January 1, 2012..

11.     I have agreed to represent the Trustee for reasonable compensation pursuant to the terms of the Exclusive Auction Agreement, a copy of which is attached to the Trustee's Motion.

12.     I have not shared nor agreed to share compensation received herein with any person.

13.     It is my understanding that the assets to be sold in the within case is substantially all of the assets of Debtor as described in the Trustee's Motion.

14.     After any sale conducted by me, I will submit to the Trustee the proceeds from the sale as directed by Trustee.  At that time I will also submit to the Trustee and the U.S. Trustee a Report of Sale containing a complete statement and itemization of all assets and equipment sold, the sale prices the purchasers and the costs of sale.

Executed this 23rd day of December, 2010.

Ross Dove, Managing Partner

Subscribed and sworn to before me this 23rd day of December, 2010 by Ross Dove, Managing Partner of Heritage Global Partners.

Witness my hand and official seal.

ALBORZ AHOURAI
Commission # 1848053
Notary Public - California
San Mateo County
My Comm. Expires Jun 4, 2013

My Commission expires: June 4, 2013

Notary Public

Notary / Witnessing Service Provided By
The UPS Store
#4153
1098 Foster City Blvd., Suite #106
Foster City, CA  94404
Phone: (650) 341-4000 Fax: (650) 341-5005
www.theupsstorelocal.com/4153

2